**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Diana Carolina Hernandez,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>Moises Becerra, et al.,<br><br>　　　　　　Respondents. | Case No. 1:26-cv-00001-JLT-SKO (HC)<br><br>ORDER CONVERTING THE MATTER TO A PRELIMINARY INJUNCTION AND DENYING THE PRELIMINARY INJUNCTION[1]; AND REFERRING THE MATTER TO THE ASSIGNED MAGISTRATE<br><br>(Docs. 2) |

## I.  INTRODUCTION

Before the Court for decision is Diana Carolina Hernandez's ("Petitioner") Motion for Temporary Restraining Order (Docs 2), filed in conjunction with her Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Having evaluated the TRO request, Respondents' opposition, (Doc. 8) and Petitioner's reply (Doc. 9), the Court converts the matter into a motion for preliminary injunction, **DENIES** that motion, and **REFERS** the matter to the assigned magistrate judge for a determination on the merits.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a citizen and national of Venezuela and has been detained since September 2025, pursuant to an *inabsentia* final order of removal from July 17, 2024. (Doc. 2 at 2.)

---

[1] Because the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction, *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the Court **GRANTS** a preliminary injunction.

1 Following her removal order, Petitioner subsequently applied for and was granted Temporary
2 Protected Status[2] pursuant to § 244 of the Immigration and Nationality Act and was issued a
3 Form I-797 TPS approval notice and employment authorization. (Doc. 2 at 2-3.)

4 On December 23, 2025, Petitioner was provided a written "Notice of Removal" that
5 stated: "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE)
6 intends to remove you to Mexico." (Doc. 8-1 at 1.) Petitioner signed the written notice. (*Id*.)
7 Respondents claim that Petitioner did not express any fear of removal to Mexico in response to
8 the written notice or at any time since. (Doc. 8 at 1.)

9 On or about midnight December 31, 2025, Immigration and Customs Enforcement
10 Officers informed Petitioner that removal action had been initiated overnight and that she would
11 be removed from to Mexico. (Doc. 2 at 2.)[3] Petitioner remains detained at the California City
12 Detention Facility in California City, California.

13 On January 1, 2026, Petitioner filed petition for a writ of habeas corpus pursuant to 28
14 U.S.C. § 2241 (Doc. 1) and an emergency restraining order (Doc. 2) requesting the immediate
15 release of Petitioner and an order enjoining Respondents from removing or transferring her out
16 of the district. (Doc. 2 at 8.) That same day, the Court found the TRO untimely with one
17 exception, finding Petitioner "raised serious questions as to the process [she] received in relation
18 to any possible removal to a third country." (Doc. 4.)[4]

19 Respondents opposed the issuance of preliminary injunctive relief on the basis that
20 Petitioner failed to exhaust administrative remedies, maintaining that "the sole impediment to
21 petitioner's prompt removal to Mexico at this juncture is this Court's minute order directing that

---

[2] Petitioner does not assert that the past grant of TPS status precludes her removal.

[3] Following a call with her attorney on the morning of January 1, 2026, Petitioner's whereabouts were unknown to her counsel. (Doc. 2 at 2.) In the TRO filed on January 1, 2026, Petitioner's counsel requested the immediate disclosure of Petitioner's location. (Doc. 2 at 8.) According to counsel for Petitioner, Petitioner was transported through removal-processing custody locations consistent with a border-removal pipeline, including movement toward the San Diego region of Otay Mesa. (Doc. 9 at 1.) After Petitioner filed a habeas petition and TRO, she was transported back to California City. (*Id*.)

[4] The Court also enjoined Respondents from removing Petitioner from the United States nor transferred out of this district "pending the hearing and any subsequent order and finds that Petitioner has satisfied the factors governing the issuance of such preliminary relief." (Doc. 4.)

1  respondents not remove petitioner from the United States nor transfer petitioner out of this

2  district unless the Court orders otherwise." (Doc. 8 at 1; Doc. 12 at 1.) Respondents also argue

3  that the court should not consider Petitioner's claim because Petitioner is a class member in a

4  non-opt-out class certified by the at this District of Massachusetts. (Doc. 8 at 1)[5]

5       On January 14, 2026, this Court issued an order requiring Respondents to file a status

6  update detailing whether: (1) Respondents intend to remove Petitioner to a third country, (2) on

7  what timeline they intend to process any such removal and (3) what process, if any, Petitioner

8  has been given in relation to her removal to a third country. (Doc. 11 at 3.) The Court also

9  ordered Petitioner to indicate whether she was requesting any additional relief on her third

10  country removal claim. (*Id*.) Respondents provided a status updated on January 23, 2026 (Doc.

11  12), informing the Court that Petitioner received written notice of the third country to which

12  removal was contemplated and that such notice is consistent with the third country removal

13  procedures established by U.S. Citizenship and Immigration Services ("USCIS"). Respondents

14  also noted that "[b]ecause Petitioner did not manifest fear, and still has not manifested fear, as to

15  Mexico, there is no further administrative process." (*Id*. at 1.)

16       Petitioner did not respond directly to the Court's January 14, 2026 order, but filed a

17  "Supplemental Brief and Notice of Newly Discovered Evidence in Support of Habeas Relief."

18  (Doc. 13.)[6] Petitioner did not request any additional relief related to her third country removal

19  claim and instead reiterated her request for immediate release under appropriate conditions of

20  supervision. (Doc. 13 at 4.)

21  ///

22

---

[5] The class certification in *D.V.D. v. U.S. Dep't of Homeland Sec.,* 778 F. Supp. 3d 355 (D. Mass. 2025) and the stayed preliminary injunction order pending appeal in *Dep't of Homeland Sec. v. D.V.D.,* --- U.S. ---, 145 S. Ct. 2153 (2025) are discussed in greater detail in Sec. 5.A. However, the Court declines to address Respondent's argument as Petitioner is not a member of the *D.V.D.* class.

[6] Petitioner's counsel informed the Court that Petitioner had reported "alarming medical symptoms that further justified immediate habeas relief," including severe vaginal bleeding and persistent pain. (Doc. 13 at 3.) Petitioner further reported that her requests for medical care and requests to access her medical records have repeatedly been ignored. (*Id*.) On February 3, 2026, the Court issued a Minute Order ordering Respondents to immediately provide Petitioner's requested medical records to counsel and to file a status report detailing whether Petitioner has received medical treatment for her ongoing health concerns. (Doc. 14.) On February 5, 2026, Respondents informed the Court that Petitioner's medical records were transmitted to her counsel and that such records indicate that Petitioner has been treated for the medical concerns raised in her most recent brief. (Doc. 16 at 1.)

### III.  LEGAL STANDARD

The standard governing the issuing of a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A party seeking a preliminary injunction must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Ctr. For Food Safety v. Vilsack,* 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter,* 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'").

The party seeking a preliminary injunction has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (holding that the moving party has "the burden of persuasion"); *see also Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits … so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *Id*.  Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

### IV.  DISCUSSION

**A.   Exhaustion of Administrative Remedies**

Respondents argue that Petitioner's habeas petition and TRO challenging her potential removal to Mexico should be dismissed because Petitioner has not exhausted administrative remedies by failing to express a fear of removal to Mexico. (Doc. 8 at 1.)  Respondents are correct in asserting that, as a prudential matter, habeas petitioners must exhaust available judicial and administrative remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v.*

*Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted); *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citation omitted).

Respondents acknowledge that, according to DHS' third country removal policy described in the March 30, 2025, and July 9, 2025 Memoranda, DHS does not affirmatively inform non-citizen detainees of the potential administrative remedy available to them. (Doc. 8 at 1; 8-2.) The memoranda states in relevant part:

> Immigration officers will not affirmatively ask whether the alien is afraid of being removed to that Country. DHS is taking this approach in line with its determination in mid-2024 that such questioning may be suggestive and that asking them leads to false claims rendering the immigration system as a whole less efficient…It is not unreasonable for an alien in that circumstance to be expected to affirmatively express a fear of persecution or torture.

(Doc. 8-2 at 2.) As a threshold issue, Respondents fail to contend with the fact that courts across the Ninth Circuit – including this Court – have found that DHS's third country removal policy, as described in the March 30, 2025, and July 9, 2025 Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent. *See, e.g., Y.T.D. v. Andrews*, No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sep. 18, 2025); *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *7 (C.D. Cal. Sept. 26, 2025) (Petitioner characterized DHS

1  policy as "forc[ing] the noncitizen to assert a right he may not know that he has.") (internal
2  citations omitted). Because the Ninth Circuit has not expressly addressed the issue of whether
3  administrative remedies must be exhausted before an injunction is sought in court when it is
4  argued that administrative remedies themselves are unconstitutional, the Court declines to do so
5  here, and instead relies on the Court's authority to waive the exhaustion requirement. Given that
6  Petitioner here has satisfied least one of the *Laing* factors applies to excuse exhaustion,[7] the
7  Court holds that the requirement of exhaustion is excused. *See Ortega-Rangel v. Sessions*, 313 F.
8  Supp. 3d 993, 1003 (N.D. Cal. 2018).

**B.    Likelihood of Success on the Merits**

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). The Petitioner asserts violations of the Due Process Clause of the Fifth Amendment based upon Respondents' third country removal procedures. (Doc. 2 at 6.)[8] Specifically, Petitioner argues that ICE's recent attempt to remove Petitioner to Mexico without screening her for protection under the Convention Against Torture ("CAT") and without meaningfully asking her whether she feared removal to Mexico violated Petitioner's due process rights. (*Id*.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session, 872 F.3d 976*, 990 (9th Cir. 2017). "It is well established that the Fifth Amendment entitles aliens to due

---

[7] Petitioner has done so here by demonstrating that pursuit of administrative remedies would be a futile gesture considering Petitioner's imminent removal to a third country. (Doc. 9 at 1-2.)  In any event, based upon the outcome here, it would make little sense to delay determination of this motion.

[8] Petitioner additionally argues that continued detention without foreseeable removal violates her Due Process Rights guaranteed by the Fifth Amendment and the Supreme Court's ruling in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 2 at 6.) In *Zadvydas*, the Supreme Court established that a noncitizen may only be detained so long as is "reasonably necessary to bring about [their removal] form the United States. 533 U.S. at 689. A detention lasting six months was found to be presumptively reasonable. *Id.* at 701. After the six-month mark, if a noncitizen provides good reason to believe their removal is not "significantly likely in the reasonably foreseeable future," the burden shifts to the government to rebut this showing or release the noncitizen. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529, (2021) (citing *Zadvydas*, 533 U.S. at 701). Here, Petitioner does not account for the fact that at the time she filed her TRO, she had been detained for only three to four months—months short of the six-month benchmark established in *Zadvydas*. To the extent Petitioner argues that her removal is not reasonably foreseeable, the Court declines to further address that argument and finds that the requested relief under *Zadvydas* is not warranted on these grounds.

1 process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").

"[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Id.* at 1041.

Where, as here, an immigration judge enters an order withholding or deferring removal to a country initially identified in removal proceedings, DHS conducts a "third country removal" where a noncitizen is removed to an alternate country. 8 C.F.R. § 1240.12(d). Even where DHS seeks to effectuate a third country removal, "noncitizens may not be removed to countries where their 'life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion,' or where 'it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal.'" *Mendoza v. Lyons,* No. 1:25-cv-01650-DC-SCR, 2025 WL 3514126, at *4 (E.D. Cal. Dec. 8, 2025) (quoting 8 U.S.C. § 1231(b)(3)(A) and 8 C.F.R. § 208.16). In the context of fear-based claims specifically, "noncitizens have a Due Process right to have their fear-based claims for relief from removal to third countries heard by a neutral adjudicator before the removal can be effectuated." *Mendoza,* 2025 WL 3514126, at *5; *see also Nguyen v. Scott,* 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.") (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).

As previously mentioned, courts across the Ninth Circuit – including this Court – have

found that DHS's third country removal policy, as described in the March 30, 2025, and July 9, 2025 Memoranda,[9] is likely unconstitutional and contrary to Ninth Circuit precedent. *See, e.g., Y.T.D.*, 2025 WL 2675760, at *11 (summarizing and quoting the July 9 memorandum, which incorporates the earlier March 30 memorandum). The court in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025) discussed at length the DHS memoranda and found that the class of plaintiffs[10] were likely to succeed in showing that DHS' Third Country Removal Policy constituted a "policy or practice of executing third-country removals without providing notice and a meaningful opportunity to present fear-based claims, and that such policy or practice constitutes a deprivation of procedural due process." *Id.* at 387. Thus, the court issued a preliminary injunction requiring that DHS satisfy certain additional procedures before removing class members to a third country:

> All removals to third countries, i.e., removal to a country other than the country or countries designated during immigration proceedings as the country of removal on the non-citizen's order of removal, see 8 U.S.C. § 1231(b)(1)(C), must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the noncitizen can understand. Following notice, the individual must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal. *See id*. If the non-citizen demonstrates reasonable fear of removal to the third country, Defendants must move to reopen the non-citizen's immigration proceedings. *Id*. If the non-citizen is not found to have demonstrated a reasonable fear of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings.

*D.V.D. v. U.S. Dept. of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (internal record citations omitted), reconsideration denied sub nom. No. CV-25-10676-BEM, 2025 WL 1495517 (D. Mass. May 26, 2025).[11]

---

[9] The July 9 memorandum, which incorporates the earlier March 30 memorandum, has been summarized and quoted previously by this Court. *See Y.T.D.*, 2025 WL 2675760, at *9–10 (citations omitted).

[10] On April 18, 2025, the District of Massachusetts certified a class of individuals subject to final removal orders whom DHS has deported or will deport to a country not previously designated as the country or alternative country of removal and not identified in writing in prior proceedings as a country to which the individual would be removed. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025).

[11] Though the injunctive relief awarded in *D.V.D.* has been stayed, *Dep't of Homeland Sec. v. D.V.D.*, — U.S. —,

1    Here, Petitioner did received an individualized written notice in a language she can understand (Spanish) identifying the country to which DHS intended to remove her (Mexico) on December 8, 2025 in accordance with the process mandated in *D.V.D.* (Doc. 8-1 at 1.) However, Petitioner additionally argues that ICE was required under Due Process to "meaningfully ask Petitioner whether she feared removal to Mexico." (Doc. 13 at 2.)

The court in *Esmail v. Noem* further analyzed how the policies in the ICE Memo "present due process issues," specifically holding that ICE's stated policy that it will only provide a reasonable fear interview when a noncitizen affirmatively asserts such fear fails to comport with due process. Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). While the record is not entirely clear as to whether Petitioner has been given any other process in relation to her possible removal to Mexico other than written notice, what is clear is that Petitioner did not request in any of her pleadings for the Court to order DHS to provide her with a reasonable fear hearing. *C.f. Martinez v. Bondi*, No. 1:25-CV-01633-EFB (HC), 2025 WL 3650477, at *4 (E.D. Cal. Dec. 16, 2025) (Petitioner requested as relief, *inter alia,* that respondents be enjoined from removing him to a third country unless respondents provide petitioner and his counsel a minimum of ten days to raise a fear-based claim for protection prior to removal).

 This is also not a situation where Petitioner has sought to reopen her withholding-only proceedings to seek review of her fear-based determination before an immigration judge. *See e.g., Castillo v. Chestnut*, 1:25-cv-01296-SAB, 2026 WL 121652 at *2 (E.D. Cal. Jan. 16, 2026) (holding that that where a petitioner received a "notice of removal" to a third country and a purported "reasonable fear interview" had occurred, due process required that the petitioner "receive a full and fair hearing of his fear-based claim before a neutral adjudicator."); *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before

---

145 S. Ct. 2153 (2025), this Court has imposed similar procedural protections when warranted. *See Y.T.D. v. Andrews*, No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sept. 18, 2025).

an Immigration Judge.").

Petitioner cites *Ibarra-Perez v. United States*, 154 F.4th 989 (9th Cir. 2025) for the proposition that noncitizens must receive certain procedural protections before being deported to a third country. (Doc. 13 at 2.) Petitioner appears to reference the holding in *Ibarra-Perez* that "failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." (*quoting Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). By asserting that "Petitioner was never screened for protection under CAT," it is unclear whether Petitioner expressed a desire to apply for CAT protections in relation to potential removal to Mexico and was denied the opportunity to do so by DHS, or whether Petitioner is suggesting that DHS is subject to additional due process obligations to presumptively screen all non-citizens for protection under CAT, beyond the obligation to inform individuals who are subject to deportation that they have the right to apply for asylum.

As such, the Court is aware of no authority which would justify immediate release or indefinitely enjoining Petitioner's removal to a third country based on the facts in the record. Accordingly, the Court finds that Petitioner is not likely to succeed on the merits of her claim on this basis.

**V.    CONCLUSION AND ORDER**

1. For the reasons set forth above, Petitioner's motions for a temporary restraining order (Docs. 2) is **DENIED**

2. To preserve this Court's jurisdiction over the Petition, Respondents **SHALL NOT** remove Petitioner from the United States or transfer him out of this District without a further order from this Court.

3. Respondents have indicated that they will not file a further brief in this matter. Even still, Petitioner may do so within 30 days or may alert the Court that no further briefing is needed. Should Petitioner file an additional brief, Respondents may file a responsive brief within 15 days thereafter and the Petitioner may file a reply within seven days after that.

4. The matter is referred to the assigned magistrate judge for consideration of the merits of the petition as quickly as possible.

IT IS SO ORDERED.

Dated: **February 19, 2026**

UNITED STATES DISTRICT JUDGE